**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**April 20, 2004**

Charles R. Fulbruge III
Clerk

**Revised May 6, 2004**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 03-30250

LUCIEN TEMPLET, JR.; ET AL.,

Plaintiffs,

MELBA IRVIN, Individually and on Behalf of Her Minor Child, Adam
Irvin; JIMMY IRVIN, Individually and on Behalf of His Minor
Child, Adam Irvin

Plaintiffs-Appellants,

VERSUS

HYDROCHEM INC.; ET AL.,

Defendants,

HYDROCHEM INC.; HYDROCHEM INDUSTRIAL SERVICES INC.; GEORGIA GULF
CORPORATION; MASTER MAINTENANCE CORPORATION; MASTER MANAGEMENT
CORPORATION; PAYNE & KELLER COMPANY INC.; LOUISIANA INTRASTATE
GAS CO. LLC; LA INTRASTATE GAS CORP.; AMOCO PIPELINE CO.; AMOCO
ENERGY TRADING CORPORATION; XL INSURANCE CO.,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Louisiana

Before DeMOSS, DENNIS, and PRADO, Circuit Judges.

DeMOSS, Circuit Judge.

Plaintiffs-Appellants, Melba Irvin, et al. (the "Irvins"),

appeal the granting of summary judgment by the district court for

Defendants-Appellees, and the subsequent denial of the Irvins'

Rule 59(e) motion to alter, amend, and reconsider in a toxic tort action arising from a chemical release from Defendants' facility.

## BACKGROUND AND PROCEDURAL HISTORY

This case arises out of claims brought in state court relating to the release of a mustard gas agent at the Georgia Gulf Corporation facility in Plaquemine, Louisiana, that occurred on or about September 25, 1996.  On November 8, 1996, suit was filed in state district court, asserting claims against multiple defendants, including Georgia Gulf Corporation, X.L. Insurance Company, Primex, Ltd., HydroChem Industrial Services, Inc., Payne & Keller Company, Inc., Master Maintenance & Construction, Inc., Amoco Energy Trading Corporation, Louisiana Intrastate Gas Company, L.L.C., and LIG Liquids Company, L.L.C. (collectively, the "Defendants").

On March 5, 1999, X.L. Insurance Company and Primex, Ltd. removed the case to federal court, asserting jurisdiction under the Convention of the Recognition and Enforcement of Foreign Arbitral Awards pursuant to 9 U.S.C. § 201 et seq.  X.L. Insurance Company and Primex, Ltd. are foreign insurance companies who were named as defendants in this action pursuant to the Louisiana Direct Action Statute, LA. REV. STAT. § 22:655.  The Irvins filed a motion to remand on April 5, 1999, that was denied by the district court on June 9, 1999.

The Irvins, who were added as additional plaintiffs to the original state court proceeding in March and September 1997,

maintain that they sustained injuries as a direct and proximate result of the negligence of the Defendants. Since joining as plaintiffs, the Irvins have been represented by four separate sets of attorneys. On January 7, 2002, the Irvins' second set of counsel, Albert Bensabat and Daniel Edwards, filed a motion to establish discovery cutoff and trial dates and/or a status conference. On March 1, 2002, the magistrate held a status conference where she set discovery deadlines, ordering the Irvins to: 1) provide the Defendants with all medical reports by March 15, 2002; 2) list all treating physicians and identify all experts by July 1, 2002; and 3) submit all expert reports by August 1, 2002. On March 14, 2002, one day before the Irvins were ordered to provide the Defendants all medical reports, Bensabat and Edwards filed a motion to withdraw as counsel for the Irvins. The following day the magistrate granted the motion to withdraw. Thereafter, the Irvins failed to identify any experts or produce any medical or expert reports in compliance with the court's deadlines.

On August 22, 2002, George Tucker enrolled as counsel for the Irvins. The district court held a status conference on August 27, 2002, that was attended by Mr. Tucker, appearing on behalf of the Irvins. The district court judge entered an order the following day referring the matter to the magistrate for entry of scheduling orders and trial preparation "anticipating a trial date in March or April 2003." On August 30, 2002, the Defendants filed a motion for

summary judgment and/or dismissal, asserting that the Irvins had failed to satisfy the elements of their claim. Specifically, the Defendants maintained that the Irvins could not, through the requisite expert evidence, establish negligence on the part of the Defendants, nor could they establish causation and damages. In the alternative, the Defendants sought the dismissal of the Irvins' claims for their failure to adhere to the court-ordered deadlines. The Irvins did not file any opposition to the Defendants' motion for summary judgment.

On October 30, 2002, the district court issued its ruling granting the Defendants' motion for summary judgment. The district court stated:

> In this case, plaintiffs have alleged that they suffered harm by exposure to the mustard gas release but have failed to produce any evidence whatsoever of such injury. In a toxic tort case such as this . . . medical evidence is essential to establish harm to plaintiffs. Without having produced any medical evidence, plaintiffs cannot establish that they suffered damages, an essential element of their case.

Subsequently, on November 5, 2002, George Tucker, the Irvins' counsel, filed a motion to withdraw from the case. The district court granted the withdrawal on November 20, 2002, and entered judgment dismissing the Irvins' case the following day.

On December 6, 2002, the Irvins obtained new counsel, who immediately filed a Fed. R. Civ. P. 59(e) motion to alter, amend, and reconsider the judgment. Specifically, the Irvins requested that the district court reconsider and vacate the November 21,

4

2002, judgment to prevent manifest injustice. On February 4, 2003, the district court denied the Rule 59(e) motion, stating that the motion for summary judgment was filed while the Irvins were represented by counsel, who neither requested a continuance nor sought a rescheduling of deadlines. The Irvins filed a timely notice of appeal on March 3, 2003.

## JURISDICTION

This suit was originally filed in Louisiana state district court on November 8, 1996. On March 5, 1999, two of the multiple defendants, X.L. Insurance Company and Primex, Ltd., removed the case to federal district court pursuant to 28 U.S.C. § 1446(d), asserting jurisdiction under the Convention of the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 et seq. The Irvins subsequently filed a motion to remand, which was denied by the district court. The Defendants' motion for summary judgment was granted, and the district court entered judgment on November 21, 2002. The Irvins filed a timely Rule 59(e) motion, which was denied by the district court on February 4, 2003. The Irvins then filed their notice of appeal on March 3, 2003.[1] This Court has jurisdiction to hear this appeal under 28 U.S.C. § 1291.

## STANDARD OF REVIEW

---

[1] In their notice of appeal, the Irvins do not raise any issue as to the propriety of the initial removal of this case from state court nor as to the propriety of the denial of their motion to remand to state court; and we accordingly have not addressed these issues on appeal.

5

## I.  The Irvins' Rule 59(e) Motion to Reconsider

The applicable standard of review of the denial of the Irvins' motion to alter, amend, and reconsider is dependent on whether the district court considered the materials attached to the Irvins' motion, which were not previously provided to the court.[2] Ford Motor Credit Co. v. Bright, 34 F.3d 322, 324 (5th Cir. 1994).  If the materials were considered by the district court, and the district court still grants summary judgment, the appropriate appellate standard of review is de novo. Id.  However, if the district court refuses to consider the materials, the reviewing court applies the abuse of discretion standard. Id.  Under this standard of review, the district court's decision and decision-making process need only be reasonable. Id.

Based on a review of the district court's ruling on the motion for reconsideration, it is unclear whether the additional materials submitted by the Irvins were considered by the district court.  The district court does not expressly or impliedly refer to the additional materials in its ruling.  Therefore, in the absence of any specific reference to these materials, we review the district court's denial of the Irvins' Rule 59(e) motion for abuse of discretion, i.e., as if the district court did not consider the additional materials.

---

[2] According to the Irvins' briefs, the additional materials included reports showing that Mr. Irvin "suffered physical and psychological injuries as a direct and proximate result of his exposure to [sic] mustard gas release at the Georgia Gulf plant."

6

**II. Defendants' Motion for Summary Judgment**

This Court reviews grants of summary judgment <u>de novo</u>, applying the same standard as the district court. <u>Tango Transp. v. Healthcare Fin. Servs. LLC</u>, 322 F.3d 888, 890 (5th Cir. 2003). Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court views the evidence in a light most favorable to the non-movant. <u>Coleman v. Houston Indep. Sch. Dist.</u>, 113 F.3d 528, 533 (5th Cir. 1997). The non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." <u>Celotex</u>, 477 U.S. at 322-23.

**DISCUSSION**

**I. Whether the district court abused its discretion in denying the Irvins' motion to alter, amend, and reconsider its ruling granting the Defendants' motion for summary judgment**.

The Irvins suggest that the proper method for evaluating a motion for reconsideration of a summary judgment where the movant submits evidentiary materials in support of its motion that were

7

not considered by the court in its summary judgment ruling involves the consideration of the factors enumerated in <u>Lavespere v. Niagara Machine & Toll Works, Inc.</u>, 910 F.2d 167 (5th Cir. 1990), overruled on other grounds, <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069 (5th Cir. 1994). The <u>Lavespere</u> factors include: 1) the reasons for the moving party's default; 2) the importance of the omitted evidence to the moving party's case; 3) whether the evidence was available to the non-movant before it responded to the summary judgment motion; and 4) the likelihood that the non-moving party will suffer unfair prejudice if the case is reopened. <u>Id.</u> at 174.

Taking these factors in turn, the Irvins argue that their failure to provide the court with the requisite medical reports, lists of treating physicians and all other experts, as well as the Irvins' medical expert reports was a direct result of the lapse in legal representation that occurred between March 15, 2002, and August 22, 2002. The Irvins contend that the withdrawal by Bensabat and Edwards on March 14, 2002, constituted "client abandonment." In response, Defendants simply argue that any delays in submitting additional materials to the court "begin and end with the Irvins."

Second, the Irvins claim that the additional materials included in their motion for reconsideration are critical to their case. Specifically, they argue that the materials include medical evidence linking their "ongoing physical and psychological sufferings" to the exposure to mustard gas at the Georgia Gulf

8

plant.  This evidence, the Irvins contend, would have established their entitlement to damages and defeated the Defendants' motion for summary judgment.  The Defendants respond by arguing that the omitted material is not important to the Irvins' case because it does not change the fact that the Irvins failed to oppose the motion for summary judgment and, in the alternative, inclusion of the materials still does not establish the damages element of their claim.

Third, the Irvins argue that although the information they included in their motion for reconsideration was available to them when the Defendants' motion for summary judgment was filed, the Irvins were precluded from producing such evidence because the court's March 1, 2002, scheduling order had established an August 1, 2002, deadline for providing expert information.  Therefore, the Irvins contend, because the deadline had already passed, they were unable to produce the relevant expert information without violating the court's scheduling order.  The Defendants simply state that the additional evidence is not "new" because it was available to the Irvins at the time the Defendants filed their motion for summary judgment.

Finally, the Irvins maintain that the Defendants will not be prejudiced if the case is reopened.  The Irvins argue that the Defendants were provided medical reports in the Irvins'responses to the Defendants' discovery requests.  In addition, the Irvins suggest that because there are at least 78 similar cases that have

9

been filed in relation to the same chemical release at issue here, the Defendants are imparted with knowledge of evidence on damages, causation, and liability, and therefore cannot claim prejudice if the case is reopened. Defendants respond by arguing that reopening the case would unfairly prejudice them as they have already expended substantial judicial resources in defending the matter pursuant to the court's March 1, 2002, scheduling order.

A Rule 59(e) motion "calls into question the correctness of a judgment." In re Transtexas Gas Corp., 303 F.3d 571, 581 (5th Cir. 2002). This Court has held that such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment. Simon v. United States, 891 F.2d 1154, 1159 (5th Cir. 1990). Rather, Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." Waltman v. Int'l Paper Co., 875 F.2d 468, 473 (5th Cir. 1989) (internal quotations omitted). Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly. Clancy v. Employers Health Ins. Co., 101 F. Supp. 2d 463, 465 (E.D. La. 2000) (citing 11 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, Federal Practice & Procedure § 2810.1, at 124 (2d ed. 1995)).

In Lavespere, this Court recognized that while a district court has considerable discretion in deciding whether to reopen a case in response to a motion for reconsideration, such discretion

is not limitless. 910 F.2d at 174. This Court has identified two important judicial imperatives relating to such a motion: 1) the need to bring litigation to an end; and 2) the need to render just decisions on the basis of all the facts. Id. (citations omitted). The task for the district court is to strike the proper balance between these competing interests. Id.

In this case, the district court stated that a motion for new trial in a nonjury case or a petition for rehearing pursuant to a Rule 59(e) motion should be based upon manifest error of law or mistake of fact, and a judgment should not be set aside except for substantial reasons. The district found that the Defendants' motion for summary judgment was filed while the Irvins "were represented by counsel, who did not request a continuance of the motion or a rescheduling of the deadlines." The district court also noted that it ruled on the unopposed motion more than sixty days after it was filed, and then issued judgment nearly three weeks later. In denying the Irvins' motion for reconsideration, the district court stated:

> [The Irvins] had ample time prior to the ruling to express some form of opposition to the disposition of their claims or to request additional time to respond. [The Irvins] have been parties to this matter for nearly six years; they have had more than enough opportunities for a "day in court."

We have held that an unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration. Russ v. Int'l

11

Paper Co., 943 F.2d 589, 593 (5th Cir. 1991).  In this case, the underlying facts were well within the Irvins' knowledge prior to the district court's entry of judgment.  However, the Irvins failed to include these materials in any form of opposition or response to the Defendants' motion for summary judgment.  Although the Irvins correctly point out that they were not represented by counsel for approximately five months between March and August 2002, they were represented by counsel, George Tucker, before the Defendants filed their motion for summary judgment and after the district court subsequently granted the motion.[3]

By denying the Irvins' motion for reconsideration, the district court's decision is not manifestly unjust in law or fact, nor does it ignore newly discovered evidence.  The district court reasonably determined that the facts in this case do not warrant the extraordinary relief associated with the granting of a motion for reconsideration.  Therefore, the district court did not abuse its discretion in denying the Irvins' Rule 59(e) motion.

**II.  Whether the Defendants' motion for summary judgment was based upon factual misrepresentations.**

The Irvins maintain that the judgment dismissing their case was premised on representations of material facts that Defendants knew to be false.  Specifically, the Irvins point to two alleged misrepresentations made by Defendants: 1) that the Irvins had not

---

[3] At no point during the pendency of this case have the Irvins alleged that any of their counsel were incompetent or incapable of pursuing their case.

12

identified any expert witnesses on issues of liability, causation, or damages to support their claims; and 2) that the Irvins had not submitted any expert reports. The Irvins refute these statements, arguing that even though the Irvins had not complied with the deadlines established by the court's scheduling order, the Defendants were still in possession of "a wealth of expert information and reports" establishing causation and damages in the form of responses to interrogatories and requests for production. In addition, the Irvins contend that their interrogatory responses identified experts they intended to use at trial.

Conversely, the Defendants argue that they have accurately reported all the facts and circumstances supporting their motion for summary judgment, including the Irvins' failure to identify any expert witnesses or provide expert reports on the issues of liability, causation, and damages.

Summary judgment is appropriate where the underlying facts are undisputed, and the record reveals no evidence from which reasonable persons might draw conflicting inferences about the facts. Prinzi v. Keydril Co., 738 F.2d 707, 709 (5th Cir. 1984). The district court based its ruling on the finding that the Irvins had not produced any medical evidence, and therefore could not establish that they suffered damages, an essential element of their case. The district court cites Celotex, 477 U.S. at 322-23, for the rule that a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other

13

facts immaterial. In addition, Fed. R. Civ. P. 56 mandates that summary judgment shall be entered against a non-movant who fails to set forth specific facts showing that there is a genuine issue for trial.

The Irvins did not deny or controvert the Defendants' statement of undisputed facts, including the representations made by the Defendants that the Irvins had not "identified any expert witnesses on issues of liability, causation, or damages" or "submitted any expert reports to support their claim." For that reason, those facts as stated were deemed admitted. Uniform Local Rule, 56.2. However, in the event the moving party relates facts in its summary judgment motion that are untrue or inaccurate, and the court subsequently relies on those misstatements in making its decision, it would be improper to allow the moving party to benefit in such a situation.

After reviewing the record, it seems clear that the Irvins indeed failed to provide either of the two items as detailed by the Defendants. In its ruling granting the Defendants summary judgment, the district court appears to have inadvertently broadened what the Defendants related in their summary judgment motion. Specifically, the court states that the Irvins failed to produce "any medical <u>evidence</u>." (Emphasis added). The Irvins did in fact respond to written interrogatories as well as provide

14

opposing counsel copies of treating physician reports.[4]  However, while these discovery responses may have constituted medical evidence, the Defendants did not state that the Irvins failed to provide <u>evidence</u>, but rather that the Irvins had not produced <u>expert</u> <u>witness</u> <u>lists</u> or <u>expert</u> <u>reports</u>.[5]  The real problem facing the Irvins is their basic failure to include this evidence in any form of opposition to the Defendants' summary judgment motion.  As such, the district court's granting of the Defendants' motion was properly based on true and correct statements of fact.

**III. Whether the district court ever reached the issue of the Defendants' motion for involuntary dismissal, and if so, whether the granting of the motion was an abuse of discretion.**

The Irvins insist that the district court based its ruling on the Irvins' failure to comply with the court's scheduling order. They argue that although the district court characterized its dismissal of the Irvins' case as a grant of summary judgment, the court's rationale for its decision "is more properly viewed as an involuntary sanction dismissal" under Fed. R. Civ. P. 16(f), 37(b), and 41(b) for a party's failure to appear at a pretrial conference, obey discovery orders, or prosecute an action. In response, the Defendants argue that the district court never ruled on their

---

[4] The interrogatory responses were not identified in the record.

[5] The treating physician reports submitted by the Irvins would most certainly not satisfy the requirements established by Rule 56(c) and 56(e) for sworn, authenticated summary judgment evidence.

15

motion to dismiss, but if the court had, involuntary dismissal would be appropriate.

Based on a review of the district court's ruling, it appears clear from the reasons the district court articulates that its decision was premised solely on the failure of the Irvins to respond to or oppose the Defendants' motion for summary judgment. The summary judgment ruling states that because the Irvins could not "establish that they suffered damages, an essential element of their case[,] Defendants are entitled to summary judgment as a matter of law." In addition, the district court specifically states that it found it "unnecessary . . . to consider the alternative motion to dismiss." Therefore, the Irvins' third and final issue on appeal is without merit.

## CONCLUSION

Having carefully reviewed the record of this case, the parties' respective briefing and arguments, and for the reasons set forth above, we affirm the district court's granting of the Defendants' motion for summary judgment and its subsequent denial of the Irvins' Rule 59(e) motion to alter, amend, or reconsider. AFFIRMED.

**DENNIS, Circuit Judge, dissenting:**

"Rule 59 gives the trial judge ample power to prevent what he considers to be a miscarriage of justice."[6] When a party moves to alter or amend a judgment under Rule 59(e), a district court is obligated to balance carefully the need for finality with the need to render a just decision *on the basis of all the facts.*[7] That obligation is increased "when the judgment, absent amendment, creates or results in a manifest injustice."[8] In this case, the need to render a just decision outweighed the need for finality, but the court did not render a just decision.

Instead, the district court provided no indication that it even considered the additional evidence that plaintiffs submitted with their Rule 59 Motion.[9] The district court, however, for the reasons discussed below, was obligated to consider the additional evidence. Accordingly, we should remand this case to the district

---

[6]11 Wright, Miller, & Kane, *Federal Practice and Procedure: Civil 2d* § 2803 (1995).

[7]*Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*6 F.3d 350, 355 (5th Cir. 1993).

[8]12 James Wm. Moore et al., *Moore's Federal Practice* § 59.30[5][a][v] (Matthew Bender 3d ed. 2003).

[9]Even if, as a technical matter, the district court considered the additional evidence, its opinion provides no analysis or discussion of that evidence. Accordingly, I agree with the majority that, for purposes of this appeal, we should review the judgment as if the district court did not consider the evidence attached to the Rule 59 motion.

court with orders to consider plaintiffs' additional evidence and reconsider the summary judgment in light of that evidence. Because the majority opinion does not require such a reconsideration, I respectfully dissent.

The Irvins submitted a Rule 59(e) motion to the district court that contained evidence that had not been presented to the district court previously. Specifically, it contained reports from Irvin's treating physicians that had been submitted in response to defendants' Interrogatories and Requests for Productions of Documents as well as an affidavit from Irvin.

The majority reviews the district court decision "as if the district court did not consider the additional materials," implicitly holding that the district court did not abuse its discretion in failing to consider the materials.[10] Considering the unique and extraordinary history of this case, however, I believe that the district court's failure to consider this information was

---

[10]The majority states that we should review the district court's Rule 59 decision *de novo* if the court considered the additional evidence, but only for an abuse of discretion if it did not consider the additional evidence. This approach is incorrect. We review the district court's *decision to consider the new evidence* for an abuse of discretion. *Fletcher v. Apfel*, 210 F.3d 510, 512 (5th Cir. 2000). However, we review the actual challenge to the summary judgment on its merits *de novo* because that determination is an issue of law. *Id.; see also Perez v. Aetna Life Ins. Co.*, 150 F.3d 550 (6th Cir. 1999) (en banc) (stating that "when the Rule 59(e) motion seeks review of a grant of summary judgment, . . . we apply a *de novo* standard of review"); 12 James Wm. Moore et al., *Moore's Federal Practice* § 59.54[4][e] (Matthew Bender 3d ed. 2003).("[I]f the [Rule 59(e)] motion sought reconsideration of a grant of summary judgment, the appellate court will review the matter *de novo*.").

18

a misuse of judicial discretion.

As this court has explained in *Lavespere  v. Niagara Machine & Tool Works, Inc.*,[11] when a party "seeks to upset a summary judgment on the basis of evidence [that the party] failed to introduce on time," the district court is obligated to weigh, *inter alia*, several factors in deciding whether to admit the evidence: (1) the reasons for the moving party's default, (2) the importance of the omitted evidence to the moving party's case, (3) whether the evidence was available to the movant before the non-movant filed the summary judgment motion, and (4) the likelihood that the nonmoving party will suffer unfair prejudice if the case is reopened.[12]

These factors, it should be noted, are simply illustrative and not exhaustive.[13]  In particular, the *Lavespere* court utilized this framework, not to limit the scope of Rule 59(e), but to explain that Rule 59(e) motions provide the district court with "considerable discretion" and that they are "not controlled by the same exacting substantive requirements as Rule 60(b) motions."[14] Because Rule 59(e) motions are subject to much more stringent time requirements than Rule 60(b) motions, Rule 59(e) motions provide

---

[11]910 F.2d 167 (5th Cir. 1990).

[12]*See id*. at 174.

[13]*See id.* (noting that the district court should consider these four factors "among other things").

[14]*See id.*

relief for the movant on grounds at least as broad as Rule 60 motions.[15] Rule 59(e), therefore, provides district courts with the power to consider equitable factors and provide relief for "any . . . reason justifying relief from the operation of the judgment."[16]

The equitable considerations under Rule 59(e) weigh in plaintiffs' favor when one considers the unique facts of this case. Specifically, (1) the Irvin's "default" resulted, not through any fault of their own but because of egregious lawyer misconduct causing them virtually total deprivation of representation and the benefits of the adversary system of justice; (2) the omitted evidence was essential to the Irvin's case; (3) the evidence was made available to defendants-movants before they filed their motion for summary judgment; and (4) defendants in this case would not have been prejudiced by an introduction of the evidence because plaintiffs had already provided them with the evidence.

First, the plaintiffs did not present the evidence to the

---

[15]*See id.; see also Smith v. Morris & Manning*, 657 F.Supp 180, 181 (S.D.N.Y 1987) (When filing a motion under Rule 59(e), "[a party] need not meet the somewhat stringent requirements of Rule 60, which is aimed at protecting the finality of judgments from belated attack.").

[16]*See* Fed. R. Civ. P. 60(b)(6); *see also Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863-64 (1987) (noting that Rule 60(b)(6) provides district courts with "authority adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice," but that such power should only be used in "extraordinary circumstances.") (internal quotations omitted).

district court initially, through no fault of their own, but because they were subjected to attorney conduct and inaction so egregious that it "amounted to nothing short of leaving [them] unrepresented."[17]  While it is true that a district court has the discretion to refuse to use Rule 59 to "rescue" a plaintiff from simple negligence, or a "blunder" by his attorney,[18] the facts of this case go far beyond a simple blunder by a plaintiff's attorney. The conduct of the Irvins' attorneys in this case constitutes "neglect so gross that it is inexcusable."[19]

The district court imposed five discovery deadlines between March 15th, 2002 and August 1st, 2002 on which plaintiffs were obligated to act.  They were required to produce current medical reports and releases by March 15th.  They were required to obtain all existing discovery from other counsel of record by April 30th. They were required to propound additional non-repetitive discovery by May 31st.  They were required to file a list of treating physicians and all other experts with the court by July 1st.  They were required to submit their medical expert reports by August 1st. The plaintiffs were *literally* without counsel during the entire period spanning these deadlines.  Indeed, the counsel that had been representing them previous to those deadlines withdrew—with the

---

[17]*Boughner v. Secretary of HEW*, 572 F.2d 976, 977 (3rd Cir. 1978).

[18]*See Lavespere*, 910 F.2d at 173.

[19]*Boughner*, 572 F.2d at 978.

court's permission–the day before the first deadline. In short, the Irvins were completely without counsel–a situation permitted by the district court–during the period of time that assistance of counsel was most crucial to the Irvins' case.[20]

Both the district court and the majority opinion minimize the impact of the Irvins' lack of counsel during this critical period. They note that George Tucker enrolled as the Irvins' counsel on August 22nd and represented them when defendants filed their summary judgment motion on August 30th. This "representation," however, was virtually non-existent. From the record, it appears that all Tucker did on behalf of the Irvins was attend one status conference. He filed no papers with the court in response to the summary judgment motion and moved to withdraw from representation of plaintiffs five days after the court granted summary judgment.

At least one other circuit recognizes that an attorney's inaction over a sustained period can be so detrimental to a client as to constitute "neglect so gross that it is inexcusable."[21] Specifically, the Third Circuit has held that it is an abuse of discretion for a district court to refuse to grant a party relief under Rule 60(b) when that party's attorney engages in "egregious conduct [that] amount[s] to nothing short of leaving his clients

---

[20]This consideration is even more important in a complex toxic tort case such as this one in which the court cannot expect a lay person to understand the issues of medical causation and the necessity of expert testimony to prove the case.

[21]*Boughner,* 572 F.2d at 978.

unrepresented." [22]

The motion in front of us today presents such egregious conduct. Plaintiffs were literally without enrolled counsel during the most critical stages of the proceedings in a factually complex case. Although it is true that at an earlier stage of the case the plaintiffs were represented by a lawyer who collected the evidence in question and submitted it to the defendants, the plaintiffs were completely without counsel during the critical period when that evidence could have been presented to the court. Upon obtaining counsel again, plaintiffs immediately filed the present Rule 59 Motion and submitted the required evidence.

Second, the omitted evidence was critical to the Irvin's case because the evidence, had the court accepted it, arguably creates a dispute of material fact that would have allowed the Irvins to defeat summary judgment. Therefore, the second *Lavespere* factor also weighs in the Irvins' favor.[23]

---

[22]*See id.* at 977. As noted above, *Boughner* was decided under Rule 60, not Rule 59. To the extent this distinction makes a difference, it works in favor of the plaintiffs here because, as explained above, a party should obtain district court relief more easily under Rule 59 than Rule 60. *See Lavespere*, 910 F.2d at 173-74 (noting that Rule 59 "is not controlled by the same exacting substantive requirements" as Rule 60); *see also, supra,* notes 8-11 and accompanying text.

[23]The majority implies that summary judgment may be appropriate even if the district court were to consider the additional evidence. Specifically, the majority asserts in footnote 5 that "[t]he treating physician reports submitted by the Irvins would most certainly not satisfy the requirements established by Rule 56(c) and 56(e) for sworn, authenticated summary judgment evidence." This issue is not as clear-cut as the majority

23

Finally, the defendants would not be prejudiced by the admission of this evidence because the plaintiffs provided defendants with the relevant information in September of 2000, almost two years before defendants filed their summary judgment motion.[24] Accordingly, the district court would not have harmed the defendants by accepting and considering the evidence submitted with the Rule 59 motion.

In short, proper application of the factors that this court has instructed district courts to use in deciding whether to consider additional evidence submitted with a Rule 59 motion should

_____

indicates. Though sworn affidavits are the typical evidence used to counter motions for summary judgment, "Rule 56 does not require that a moving party support its motion with affidavits." *Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Instead, Rule 56(c) specifically states that the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file" in addition to affidavits when ruling on a motion for summary judgment. The record in this case establishes that these treating physician reports were included in responses to interrogatories by the defendants. It is not clear how the totality of the evidence will bear on the motion for summary judgment. Such a decision should be for the district court in the first instance after it properly considers the evidence submitted with the Rule 59 motion. *See, e.g., Boughner,* 572 F.2d at 979 (remanding case to district court for reconsideration after reversing district court denial of appellant's Rule 60 motion).

[24] It is also worth noting in this context that the district court has presided over many other cases involving this same chemical spill. In exercising its discretion in deciding whether to consider plaintiffs' additional evidence, the district court should have also considered the likelihood, based on its experience in these other cases, that plaintiff's additional evidence was relevant to the merits of the summary judgment motion.

have led the district court to consider the evidence.[25]

There is, of course, a need for finality of judgments. However, in an extraordinary case such as this–where plaintiffs had evidence arguably sufficient to survive summary judgment, submitted that evidence to defendants, and failed to provide the evidence to the court in a timely manner due only to a complete abandonment by the legal system–the district court misused its discretion in denying the Rule 59(e) motion without considering the relevant evidence submitted with it.

Accordingly, I would vacate the summary judgment and remand this case to the district court with instructions to consider the evidence that plaintiffs submitted with their Rule 59 motion before acting on the motion.

Respectfully, I dissent.

---

[25]To the extent that judicial economy is also a factor in a Rule 59 analysis, it is also worth noting that the district court could have accepted the evidence with almost no additional burden. It simply had to review what the plaintiffs submitted with the Rule 59 motion.